## Wytheville.

## McDaniel v. Daves.

June 12, 1924.

1. APPEAL AND ERROR—*Demurrer to the Evidence—Supreme Court of Appeals must Hold as Jury might have Found.*—In an action to recover damages for breach of a contract where defendant demurred to the evidence, under the rule applicable to a demurrer to the evidence, where the jury might have found that the plaintiff was ready, able and willing to perform the contract on his part, and that defendant was wholly in default, the Supreme Court of Appeals must so hold.

2. VENDOR AND PURCHASER—*Tender of Deed where Vendee Notifies Vendor that He is Unable to Perform the Contract.*—In an action by vendor for the breach of a contract of sale, the defendant was unable to perform his contract, and abandoned any effort to do so before the time fixed for closing up the contract, and so notified plaintiff.

   *Held:* That under these circumstances, no tender of a deed by plaintiff to defendant was necessary before bringing action for damages for breach.

3. VENDOR AND PURCHASER—*Tender of Deed—Waiver—Demurrer to the Evidence.*—In an action by a vendor for breach of a contract of sale where defendant demurred to the evidence, there was abundant evidence to support a verdict of the jury that tender of a deed by the vendor had been waived by defendant.

   *Held:* That the Supreme Court of Appeals must hold that if tender was necessary, it was waived.

4. VENDOR AND PURCHASER—*Essential Elements of Contract—Time and Terms of Payment.*—The time and terms of payment of the purchase money are essential elements of a contract for the sale and purchase of real estate, and where such time and terms are left open for future negotiation and settlement, the failure to agree upon them renders the contract void and unenforceable by a bill in equity or an action for damages, but such time and terms are not so left open where the intention of the parties can be gathered from language used in the contract to which the law attaches a fixed and definite meaning.

5. CONTRACTS—*No Time Fixed for Payment—No Time Fixed in Agreement to do Something other than Pay Money.*—An agreement to pay money, no time being specified, is held to be an agreement to pay

. the same on demand, while an agreement to do something other than to pay money, no time being expressed, means a promise to do it in a reasonable time.

6. CONTRACTS—*Payment—Time of Payment not Fixed—Intention of Parties—Contract Read as a Whole.*—The mere fact that the time of payment of a sum of money is not mentioned in a contract, otherwise complete, does not render the contract void, but the omission may be supplied by legal intendment and the contract thereby rendered complete in that respect. Such is the rule applicable to a promise to pay money, where the time of payment is not expressed in the contract, and cannot be ascertained from the language of the contract. The contract, however, is to be read as a whole, and, if so reading it a different time of payment is disclosed, effect will be given to the intention of the parties.

7. VENDOR AND PURCHASER—*Assumption of Encumbrances—Time of Payment of Part of Purchase Price not Specified in Contract—Case at Bar.*—In the instant case, an action by vendor for breach of contract by vendee, the purchase price of the land was $15,000.00, payable $1,000.00 cash, and the assumption of the vendor's contract with his grantor under which he was obligated to pay $11,500.00. This left $2,500.00 of the price agreed to be paid by defendant, the time of payment of which was not specifically stated in the contract. The contract fixed the amount of defendant's cash payment and the amount of his credit or "deferred installments," and the time for the payment of the $2,500.00 was not a matter left for "future negotiation and settlement," but was simply not mentioned.

*Held:* That by a fair construction the $2,500.00 was payable on the date for closing the transaction and the execution of deeds.

8. CONTRACTS—*Uncertainty—Law Loath to Declare Contracts Void.*—The law is loath to declare contracts void for uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for parties, neither are they willing to release them from obligations which they have assumed if they can be ascertained with reasonable certainty from the language used, in the light of surrounding circumstances.

9. VENDOR AND PURCHASER—*Action for Damages—Specific Performance—Certainty of Contract.*—Courts of equity sometimes refuse to exercise their discretionary jurisdiction of specific performance under circumstances which would not bar an action at law for damages. The same degree of certainty is not required in an action to recover damages for a breach of contract as in a suit in equity for specific performance.

10. VENDOR AND PURCHASER—*Action by Vendor for Breach of Contract—Measure of Damages.*—The instant case was not a suit in equity for the specific performance of the contract, nor an action at law on the

contract to recover the purchase money, but an action at law to recover damages for a breach of the contract. Hence the Virginia doctrine, announced in *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861, is not applicable. In that case, the action was on the contract to recover the purchase money, and recovery was allowed "on the theory that the action is in the nature of a suit in equity for specific performance."

11. Vendor and Purchaser—*Action by Vendor for Breach of Contract— Measure of Damages.*—The question of the measure of damages for the breach of a contract for the purchase of real estate by the vendee has generally arisen between a vendor in possession of the land and a purchaser from him. The rule generally prevailing is that the measure of damages for a purchaser's refusal to perform a contract for the purchase of real estate is ordinarily the difference between the contract price and the market value at the time of the breach, with interest from the date of the breach, where the title remains in the vendor and the money in the purchaser.

12. Vendor and Purchaser—*Action by Vendor for Breach of Contract— Measure of Damages—Vendor not in Possession.*—In the instant case, an action for a breach of a contract for the purchase of real estate by the vendee, the vendor had never had possession of the property. In fact, the vendor sold to defendant his bargain with his grantor at a profit of $2,000.00. This profit was what the parties contemplated would be the measure of the loss in case of default by defendant.

*Held:* That the measure of damages sustained by plaintiff was the difference between the price he had agreed to pay for the land and the price at which he sold to defendant, namely, $2,000.00.

13. Contracts—*Action for Breach—Measure of Damages—Compensation.*— For the injury caused by the nonperformance of most contracts the primary, if not the only, remedy of the injured party is an action for damages for the breach. In fixing the amount of these damages, the general purpose of the law is, and should be, to give compensation; that is, to put the plaintiff in as good position as he would have been in had the defendant kept his contract.

Error to a judgment of the Circuit Court of Mecklenburg county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff for a less sum than he claimed, and he assigns error.

*Affirmed.*

This was an action to recover damages for breach of a contract.

S. T. Goffard contracted to sell to G. W. McDaniel, and the latter agreed to purchase of the former, by written contract bearing date January 14, 1920, a tract of land in Mecklenburg county, for the sum of $13,000.00. Possession was not to be given until December 20, 1920, but the purchaser was "to have permission to sow his fall seed on lands where the crops have been removed." The vendor was to pay the taxes and receive the rents for the year 1920. The vendor and his wife were named as parties of the first part in the contract, which contains the following provisions:

"The parties of the first part hereby agree to allow interest at six per cent on the cash payments made from date made until possession is given for the price of thirteen thousand ($13,000.00) dollars, payable as follows: $1,500.00 cash, $5,500.00 on or before January 20, 1921, and the balance in one, two and three years from January 1, 1921, and said McDaniel assumes the loan on the said farm to the Federal Reserve Bank for $3,000.00.

"The credit payments to be evidenced by negotiable notes, with interest at six per cent from January 1, 1921, payable annually, and to be secured by a deed of trust on said property.

"The said parties of the first part covenant to convey the said property to the said party of the second part, or to whomsoever he (they) may direct, by a good and sufficient deed, with general warranty, and usual covenants, free of clouds and defects, upon the payment of the cash payment thereinabove provided.

"The said party of the second part covenants to comply with all the terms of this sale by making said cash payments, and by giving negotiable notes for the de-

ferred installments, and a deed of trust on said property to secure said notes as set forth above, at the same time the deed is executed and delivered, as a part of the same transaction, provided the title to said property is free from valid objection."

The cash payment of $1,500.00 mentioned in the contract was paid by McDaniel.

On May 22, 1920, McDaniel (the plaintiff) entered into the following contract in writing with E. H. Daves (the defendant):

"This contract made this 22nd day of May, 1920, between Pritchett-Sebrell-Ferrell Corp., agent G. W. McDaniel, parties of the first part, and E. H. Daves, party of the second part;

"Witnesseth: That the said parties of the first part have this day sold and do by these presents sell to the said party of the second part, and the said party of the second part has this day bought and does by these presents buy from the said parties of the first part, the following described property, to-wit: That certain tract of land on farm known as Terry Gafford farm, fronting on the national highway, about four miles from South Hill, on road to Boydton, and containing 111 acres, more or less. It being the same farm in all respects sold by Terry Gafford to G. W. McDaniel, in 1920, for the price of fifteen thousand and 00.100 ($15,000.00) dollars, payable as follows: One thousand and 00.100 cash, and assume the contract of sale G. W. McDaniel made with Terry Gafford, the credit payments to be evidenced by negotiable notes, with interest at six per cent payable annually and to be secured by a deed of trust on said property.

"The said parties of the first part covenant to convey the said property to the said party of the second part, or

to whomsoever they (he) may direct, by a good and sufficient deed, with general warranty and usual covenants, free of clouds and defects, upon the payment of the cash payment hereinabove provided.

"The said party of the second part covenants to comply with all the terms of this sale by making said cash payments, and by giving negotiable notes for the deferred installments, and a deed of trust on said property to secure said notes as set forth above, at the same time the deed is executed and delivered, as a part of the same transaction, provided the title to said property is free from valid objection.

"It is further understood and agreed between the parties hereto that the taxes for the year 1920 are to be paid by Terry Gafford. Insurance on the buildings to be prorated to day of execution of deed and rents, no rents.

"Possession to be given to party of the second part on or before January 1, 1921.

"Of the cash payment of $1,000.00, above mentioned, the sum of $1,000.00 has been paid, the receipt whereof is hereby acknowledged.

"Witness the following signatures and seals."

Daves paid to McDaniel the $1,000.00 cash required by the contract.

Some time after the date of the latter contract Daves moved some portion of his personal property on the farm, but before January 20, 1921, he moved it off and declared his inability to complete his purchase, and never thereafter undertook to comply with his contract.

McDaniel then brought suit against Daves for specific performance, but his bill was dismissed on demurrer thereto; thereupon McDaniel brought the present action to recover damages for the breach of the contract, laying his damages at $3,000.00.

The following account of damages was filed with the notice of motion:

## "EXHIBIT STATEMENT.

"Plaintiff claims the difference between the $15,000.00 contract, on which Daves paid $1,000.00, thus reducing it to _____ $14,000.00

And the amount due by McDaniel under contract with Terry Gafford, which is $11,500.00, McDaniel having paid $1,500.00 on the $13,000.00 contract_____ 11,500.00

"Amount due G. W. McDaniel by E. H. Daves_____ $2,500.00

"To amount paid by G. W. McDaniel to Terry Gafford for damages resulting from breach of contract by H. H. Daves with G. W. McDaniel_____ 500.00

$3,000.00"

The defendant demurred to the notice of motion, but his demurrer was overruled. The plaintiff then introduced his evidence, to which the defendant demurred, and the jury found a verdict for the plaintiff for $1,500.00, subject to the opinion of the court on the demurrer to the evidence. The plaintiff moved to set aside the verdict because it was too small and asked the court to enter up judgment in his favor for $3,000.00. The court refused to do this, but reduced the amount of the verdict to $1,000.00, overruled the demurrer to the evidence and entered judgment for the plaintiff for $1,000.00. Of this judgment the plaintiff complains.

*George E. Allen* and *Henry E. Lee,* for the plaintiff in error.

*Irby Turnbull,* for the defendant in error.

BURKS, J. (after making the foregoing statement), delivered the opinion of the court.

[1] Under the rule applicable to a demurrer to the evidence, the jury might have found, and hence this court must hold, that the plaintiff was ready, able and willing to perform the contract on his part, and that the defendant was wholly in default.

[2, 3] The defendant was unable to perform his contract, and abandoned any effort to do so before the time fixed (January 20, 1921) for closing up the contract according to its terms, and so notified the plaintiff. Under these circumstances, no tender of a deed by the plaintiff to the defendant was necessary before bringing his action for damages for its breach. *Hawley* v. *Mason,* 9 Dana (Ky.) 32, 33 Am. Dec. 522; *Kuhlman* v. *Wieben,* 129 Iowa 188, 105 N. W. 445, 2 L. R. A. (N. S.) 666; *Barnes* v. *Morrison,* 97 Va. 372, 34 S. E. 93; 6 R. C. L. 948, sec. 328. Moreover, if tender was necessary, we must hold, on the defendant's demurrer to the evidence, that it was waived. There was abundant evidence to support a verdict of a jury so finding.

Counsel for the plaintiff in error have argued at length and cited many cases on the meaning of the word "assume" and what are not "speculative profits." We do not deem it necessary to enter upon any discussion of these subjects. There were no collateral agreements on the part of Mitchell in his contract with Gafford, but only promises to pay money and to secure the deferred installments by a deed of trust on the property con-

veyed, and the effect of the assumption of these liabilities would not seem to require discussion. The subject of speculative profits, in our view of the case, is not involved.

The record presents for our consideration two questions, the answers to which will settle the controversy. First, was there a completed and binding contract between the plaintiff and the defendant for the sale and purchase of the land, and, second, what was the measure of the plaintiff's damages?

Of these in their order.

The defendant insists that there was no completed contract because no time was fixed for the payment of $2,500.00 of the purchase money. His position is that the purchase price was $15,000.00; that $1,000.00 was paid in cash, $5,500.00 was to be paid on January 20, 1921, that a farm loan of $3,000.00 was to be assumed, and that $3,000.00 was to be paid in equal installments of one, two and three years, thus leaving $2,500.00 for which no time of payment was fixed.

[4] Counsel for the defendant rely upon *Edichal Bullion Co.* v. *Columbia Gold Mining Co.*, 87 Va. 641, 13 S. E. 100; *Berry* v. *Wortham*, 96 Va. 87, 30 S. E. 443, and 1 Elliott on Contracts, section 170, in support of the proposition that the time and terms of payment of the purchase money are essential elements of a contract for the sale and purchase of real estate, and that a failure to agree upon them renders the contract void and unenforceable by a bill in equity or an action for damages. This proposition is not denied where such time and terms are left open for future negotiation and settlement, but they are not thus left open where the intention of the parties can be gathered from language used in the contract to which the law attaches a fixed and definite meaning.

In *Woodward* v. *Foster*, 18 Gratt. (59 Va.) 200, 205, it is said: "When the legal import of a contract is clear and definite, the intention of the parties is, for all substantial purposes, as distinctly and fully expressed, as if they had written out in words what the law implies. It is immaterial how much or how little is expressed in words, if the law attaches to what is expressed a clear and definite import."

[5] In *Young* v. *Ellis*, 91 Va. 297, 301, 21 S. E. 480, it is said: "An agreement to pay money, no time being specified, is held to be an agreement to pay the same on demand    *    *    while an agreement to do something other than to pay money, no time being expressed, means a promise to do it in a reasonable time," and such we understand to be the law of this State.

In *Dunlop* v. *Baker* (C. C. A., 4th Circuit), 239 Fed. 193, 152 C. C. A. 181, there was a contract for an option on real estate, as follows:   "For and in consideration of one dollar, to me in hand paid, the receipt of which is hereby acknowledged, and other good and sufficient considerations, I hereby agree to give J. J. Dunlop, or assigns, the exclusive right to purchase the 418 acres of land owned by Robert E. Baker, situated in Prince George county, State of Virginia, with the appurtenances thereunto belonging for the sum of $12,000.00 from the 9th day of April, 1915, to the 9th day of July, 1915, upon the following terms: $200.00 on signing the contract, and trust for balance of equity on the delivery of good and sufficient warranty deed, and the balance as follows: Purchaser to assume existing trust on property." When the option was given there were deeds of trust on the land amounting to $8,000.00 and $200.00 was to be paid "on signing the contract." Deducting these sums from the option price of $12,000.00 left $3,800.00, for which it was claimed that no time of pay-

ment was fixed.      In reply to the objection of indefinite-ness and uncertainty, the court said:

"The defense of indefiniteness and uncertainty is equally unfounded.    The option clearly meant that upon its acceptance and the execution of the contract of sale, the purchaser was to pay $200.00 in cash, assume the payment of the debts secured by the trust deeds covering the property, and execute for the benefit of the seller a trust deed as security for the difference between the purchase price, $12,000.00, and the aggregate of the cash payment and the liens assumed by the purchaser. This construction of the contract was assented to by the bankrupt in his answer to the original petition.

"The only item not definitely fixed was the time for the payment of the balance going to the seller.    But it is settled by authority from which there is no dissent that expression of the time of payment is not essential to the validity of a contract of sale.    If no time be mentioned, it is to be inferred that either immediate payment or payment in a reasonable time according to circumstances is intended.    36 Cyc. 597, and authorities cited."

[6] The mere fact that the time of payment of a sum of money is not mentioned in a contract, otherwise complete, does not render the contract void, but the omission may be supplied by legal intendment and the contract thereby rendered complete in that respect.    Such is the rule applicable to a promise to pay money, where the time of payment is not expressed in the contract, and cannot be ascertained from the language of the contract.

In 1 Greenleaf Ev., section 277, it is said:    "Where the language of the instrument has a settled legal construction, parol evidence is not admissible to contradict that construction.    Thus, where no time is expressly

limited for the payment of the money mentioned in a special contract in writing, the legal construction is, that it is payable presently." See also *Hawkins* v. *Studdard*, 132 Ga. 265, 63 S. E. 852, 131 Am. St. Rep. 190.

The contract, however, is to be read as a whole, and, if so reading it, a different time of payment is disclosed, effect will be given to the intention of the parties.

[7] In the instant case, a fair construction of the contract between the plaintiff and the defendant made the $2,500.00 due and payable on January 20, 1921, when the transaction was to be closed by the execution of a deed and a deed of trust to secure the deferred payments. Under the contract between Gafford and McDaniel, in addition to the $3,000.00 due to the Federal Reserve Bank, which McDaniel was to assume, he was to make a *cash payment* of $1,500.00 and to give his notes for $3,000.00 at one, two and three years, equal installments, which were denominated as *deferred installments*, but there was also an intermediate payment of $5,500.00 to be made on January 20, 1921, when the transaction was to be closed, which was not to be a deferred installment. Daves bought of McDaniel at $15,000.00, "payable as follows: One thousand and 00–100 cash and assume the contract of sale G. W. McDaniel made with Terry Gafford, the credit payments to be evidenced by negotiable notes, with interest at six per cent payable annually and to be secured by a deed of trust on said property." Under the Gafford contract there were to be no "credit payments," no "deferred installments" except the three notes for $1,000.00 each, and the payment of these Daves agreed to assume. He also assumed the payment of $5,500.00 due by McDaniel January 20, 1921, and the $3,000.00 due to the Federal Reserve Bank. He agreed to pay $15,000.00 for the property, of which sum he paid $1,000.00 in

cash, and assumed the above mentioned obligations of McDaniel, amounting to $11,500.00. This left $2,500 of the price agreed to be paid by Daves, the time for the payment of which was not specifically stated in his contract. The contract fixed the amount of his cash payment and the amount of his credit or "deferred installments," and the time for the payment of the $2,500.00 was not a matter left for "future negotiation and settlement," but was simply not mentioned. There is nothing in the evidence in the cause to indicate that the parties did not intend the contract to embrace their complete and final agreement on the subject. It is plain that the $2,500.00 was not to be a part of either the cash payment or the "deferred installments," and as January 20, 1921, was the date for closing the transaction and the execution of deeds, as well as the payment of $5,500.00 to Gafford, it is but a fair construction of the contract to fix that date as the time intended by the parties for the payment of the $2,500.00.

[8] The law is loath to declare contracts void for uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for parties, neither are they willing to release them from obligations which they have assumed if they can be ascertained with reasonable certainty from the language used, in the light of surrounding circumstances. *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861.

[9] Courts of equity sometimes refuse to exercise their discretionary jurisdiction of specific performance under circumstances which would not bar an action at law for damages. The same degree of certainty is not required in an action to recover damages for a breach of contract as in a suit in equity for specific performance.

In *Edichal Bullion Co.* v. *Columbia Gold M. Co., supra,* it is said: "The contract, which is sought to be specifi-

cally executed, ought not only to be proved, but the terms of it should be so precise, as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it is insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it; but will leave the party to his legal remedy."

In *Manss-Owens Co.* v. *H. S. Owens & Son*, 129 Va. 183, 105 S. E. 543, it is said: "Where a party seeks specific performance of a contract, the terms of the contract must be certain in all particulars essential to its enforcement; but, if the relief sought is the recovery of damages, it may be sufficient if there is certainty only as to the general scope and stipulations of the contract."

In Pomeroy on Contracts (2d ed.), section 159, it is said: "A greater amount or degree of certainty is required in the terms of an agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere nonperformance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness. The suit in equity is wholly an affirmative proceeding. The mere fact of nonperformance is not enough; its object is to procure a performance by the defendant, and this demands a clear, definite, and precise understanding of all the terms; they must be exactly ascertained before their performance can be enforced."

In 6 R. C. L. page 644, section 59, the law is stated as follows: "It is evident that courts can neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty. Damages cannot be measured for the breach of an obligation when the nature and extent of the obligation is

unknown, being neither certain nor capable of being made certain. Greater certainty, it has been said, is necessary for specific performance than to maintain an action for damages. Perhaps it would be more accurate to say that the difference between the two classes of cases is not in the amount or degree of the certainty required, but in the extent of the certainty. Where the relief sought is specific execution, it is essential that the contract itself should be specific. In other words, the certainty required must extend to all the particulars essential to the enforcement of the contract. But where there has been an entire breach, and compensation is asked in damages, it may be sufficient if there be certainty only as to the general scope and stipulations of the contract. It may well be doubted, however, whether there has been any practical recognition of any such distinction by the courts. However, the law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore, the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Though there are some formal imperfections in a written contract, still it is sufficient if it contains matters which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves."

[10] Coming now to the measure of damages. This was not a suit in equity for the specific performance of the contract, nor an action at law on the contract to recover the purchase money, but an action at law to recover damages for a breach of the contract. Hence the Virginia doctrine, announced in *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861, relied on by both sides, is not applicable. In that case, the action was on the contract to recover the purchase money, and recovery was allowed

"on the theory that the action is in the nature of a suit in equity for specific performance." The doctrine is based largely on *Bailey* v. *Clay*, 4 Rand. (25 Va.) 346, where it was said that "the stipulated price of property sold is certainly the proper measure of damages for the nonperformance of the contract, if no evidence is offered to show that under the circumstances some other measure is more proper." As stated in the opinion in *Turner* v. *Hall*, the Virginia doctrine on the question there involved is contrary to the doctrine "very generally supported by the authorities."

[11] The question of the measure of damages for the breach of a contract for the purchase of real estate by the vendee has generally arisen between a vendor in possession of the land and a purchaser from him. The rule generally prevailing is that the measure of damages for a purchaser's refusal to perform a contract for the purchase of real estate is ordinarily the difference between the contract price and the market value at the time of the breach, with interest from the date of the breach, where the title remains in the vendor and the money in the purchaser. *First M. E. Church* v. *North*, 92 Kansas 381, 140 Pac. 888; *Harmon* v. *Thompson*, 119 Ky. 528, 84 S. W. 569; *Wilson* v. *Hoy*, 120 Minn. 451, 139 N. W. 817; *Smith* v. *Lander* (Tex. Civ. App.), 89 S. W. 19; *Old Colony R. Corp.* v. *Evans*, 72 Mass. (6 Gray) 25, 66 Am Dec. 394.

[12] In the instant case, however, the vendor never had possession, and what McDaniel did, in effect, was to sell to Daves his bargain with Gafford at a profit of $2,000.00. This profit was what the parties contemplated would be the measure of the loss in case of default by Daves.

In *Roper* v. *Milbourn*, 93 Neb. 809, 142 N. W. 792, Ann. Cas. 1914-B, 1225, it was held that on a breach by

the vendee of a contract for the sale of land, the vendor may recover of the vendee such damages as were fairly within the contemplation of the parties at the time they made their contract.    In the instant case, the contract measured the damages which the parties had in contemplation at the time the contract was entered into at $2,000.00.

In *Scheer* v. *Achlomowitz* (N. Y. Sup.), 88 N. Y. Supp. 170, it was held that in an action for breach of a contract by which the plaintiff agreed to sell certain premises to the defendant, the defendant having, before the day for the delivery of the deed, bought of the owners, thus preventing plaintiff from buying of them, the plaintiff must, to prove damages, show the price at which he could have bought of the owners; the difference between that and what the defendant agreed to pay being the measure of damages.

In *Booth* v. *Milliken*, 127 App. Div. 522, 111 N. Y. Supp. 795, affirmed in 194 N. Y. 553, 87 N. E. 1115, the vendor who sued for damages for breach by the vendee did not own the land at the time he made the sale.    In speaking of the proper measure of damages, the court said: "The (trial) court adopted and applied the wrong measure of damages in permitting plaintiff to prove the market value of the land and in basing the damages on the difference between the market value and the contract price.    This is the proper and usual rule where the vendor actually owns the land, but it is wholly inapplicable where he has to purchase it himself in order to fulfill his contract..    In such case, his loss cannot exceed the difference between what it would cost him to acquire the land and what the defendant promised to pay.    It may be that, if his contract with the owner was at a price far below the market price, he could not recover the whole difference, but he certainly

cannot recover more.    If his contract with the owner was at a price below the market price, he would not be damaged to the extent of the difference between those prices by the defendant's refusal to complete the purchase, because that difference would be represented by the land, which he presumably could sell at the market price.    The true measure of damage in a case like the present, assuming an obligation on the part of the defendant to purchase and ability on the part of the plaintiff to put himself in a position to convey, would be the value of his bargain, and that would be the difference between what it would cost plaintiff to acquire the property and the contract price, not exceeding, however, the difference between the fair market value and the contract price."

So, in the instant case, the measure of the damages sustained by the plaintiff was the difference between the price he had agreed to pay for the land and the price at which he sold to Daves.    This was manifestly what the parties had in mind at the time the contract was entered into, and gives to the plaintiff all he could have gotten if Daves had not made default.    This was all the plaintiff was entitled to recover.    Daves was not responsible for the $500.00 paid by McDaniel to Gafford for a release of his contract with him.

[13] In Williston on Contracts, section 1338, it is said: "For the injury caused by the nonperformance of most contracts the primary, if not the only, remedy of the injured party is an action for damages for the breach. In fixing the amount of these damages, the general purpose of the law is, and should be, to give compensation—that is, to put the plaintiff in as good position as he would have been in had the defendant kept his contract."

Daves had already paid to McDaniel $1,000.00 of the

$2,000.00 profit to which he was entitled, and when the jury brought in a verdict against Daves for $1,500.00, it was for $500.00 more than the plaintiff was entitled to receive, and the trial court committed no error in reducing the verdict to $1,000.00 and entering judgment therefor in favor of the plaintiff.

We find no error in the judgment of the trial court.

*Affirmed.*