RONALD H. YAFFE

V.

HERITAGE SAVINGS & LOAN ASSOCIATION, ET AL.

Record No. 850763

June 10, 1988

Present: All the Justices

*Hugh T. Antrim (Christopher M. Malone; Perkins Wilson; Thompson & McMullan*, on briefs), for appellant.

*William S. Smithers, Jr. (R. Paul Childress, Jr.; Kimberly S. Wright; Thompson, Smithers, Newman & Wade*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal raises questions concerning the finality of an auction sale, the binding nature of the contract formed by its completion, and whether a trustee, personally conducting a foreclosure sale under a deed of trust, has authority to bind the highest bidder

by making a written memorandum which will satisfy the statute of frauds.

## I. Facts

Heritage Savings and Loan Association (Heritage) held a note secured by deed of trust on residential property in Richmond. In March 1984, the note being in default, Heritage caused Winfrey T. Wade, a member of the bar, to be appointed as substitute trustee and directed him to foreclose. The trustee duly advertised the sale in the *Richmond Times-Dispatch*. The advertisement stated that the sale was to be subject to a prior deed of trust, which was described, and also subject to filed and unfiled mechanic's liens. The advertisement also stated: "Cash. Bidder's deposit of 10% of the bid price may be required, with balance of sale price to be paid in 18 days."

On May 11, 1984, the sale was held pursuant to the advertisement and was well attended. Mr. Wade personally conducted the sale as trustee and did not employ an auctioneer. Before receiving bids, he read the advertisement aloud, stated that the prior deed of trust could be reinstated for a limited period of time, and mentioned the balance due on it. He asked if anyone in attendance had questions, but no questions were forthcoming. Witnesses who had attended the sale described him as a "soft-spoken individual" with a "low key" manner whose reading was "[v]ery level" and in a "monotone."

Bidding was active. At length, Ronald H. Yaffe (Yaffe) made the last and highest bid at $110,000. The trustee called for higher bids. Receiving none, he said, "we are going once for $110,000, we are going twice for $110,000"; then, after pausing to go "all the way around the faces in the crowd and [asking] if there were any other bids," he said, "we are going three times for $110,000 and it's sold for that amount." The trustee did not use an auctioneer's hammer.

Mr. Yaffe came forward and identified himself as the high bidder. He told the trustee that he would go to his house across the street to get his checkbook in order to make the required deposit. He left for a few minutes. During his absence, the trustee wrote out and signed a memorandum of sale recording the transaction. When Yaffe returned, he advised the trustee that he had not realized that the sale was subject to a prior deed of trust, refused to tender a deposit, and asked the trustee to reopen the bidding. The

trustee refused to do so and Yaffe refused to complete the purchase.

After written notice to Yaffe that he was bound by contract and that the property would be resold at his risk, the trustee readvertised the property in identical terms and sold it on June 15, 1984, to the highest bidder for $80,000.

## II. Proceedings

Heritage and the trustee brought this action against Yaffe to recover as damages the $30,000 difference between the two sales, as well as the expenses of the second sale. The court overruled Yaffe's demurrer, and the case proceeded to jury trial. At the conclusion of all the evidence, the court granted the plaintiff's motion to strike the defendant's evidence and discharged the jury, entering summary judgment for Heritage and the trustee against Yaffe in the amount sued for.

The court relied on *Definite Contract v. Tumin*, 158 Va. 771, 790, 164 S.E. 562, 568 (1932), where we said:

It is an implied condition of a sale by a trustee under a deed of trust conveying real estate to secure the payment of a debt that, if the purchaser fails or refuses to comply with his bid, the trustee shall have the authority, if he acts with reasonable promptness after the breach, to resell the property, after due notice to the purchaser, at the risk of the purchaser; and that the resale shall be made upon the same notice and upon the same terms and conditions as those prescribed in the deed of trust for the original sale. If a resale is so made, it conclusively fixes the damages for the vendee's breach of contract . . . .

## III.  Requirement of Deposit

Yaffe argues that his $110,000 bid was not "effectively received" by the trustee because the advertisement contained the words: "Cash. Bidder's deposit of 10% of the bid price may be required . . . ." He points out that Code § 55-59.4(2) provides, in pertinent part: "The trustee may require of any bidder at any sale a cash deposit of as much as ten per centum of the sale price . . . before his bid is *received*. . . ." (Emphasis added). He says that because he did not give the trustee a deposit, his bid was never "received."

■ We reject this reasoning. The statute is permissive, authorizing but not mandating a deposit requirement. The advertisement, which fixed the terms of the sale, left the requirement of a deposit to the trustee's discretion. Such a requirement is solely for the trustee's protection, and the trustee had authority to impose it or to waive it at his discretion. The deposit requirement was never made a condition precedent to the sale. If the trustee had continued to insist upon it, the bidder's refusal to make a deposit would have been a breach by the bidder, and no excuse for further nonperformance on his part. As it happened, however, the trustee waived the deposit requirement by recording the sale without a deposit and demanding settlement. Yaffe cannot complain of this waiver, which relieved him of part of the burden of performance.

## IV. Finality of Sale

Yaffe contends that the evidence was insufficient to warrant the trial court's legal conclusion that the sale was completed. He concedes that an auction sale is concluded when the auctioneer announces the completion of the sale "by the fall of the hammer or in other customary manner," citing by analogy Code § 8.2-328 which governs auction sales of personal property, but he complains that those requirements were not met in this case.

■ There is no rigidly prescribed prerequisite for the conclusion of an auction sale of real property. The literal "fall of the hammer," although commonly employed in practice and frequently alluded to in the decided cases, has never been regarded as essential to a valid sale. All that is necessary is that the auctioneer, after receiving the apparent last and highest bid, give clear notice of his intention to accept it if no higher bids are forthcoming, give those present a fair opportunity to submit higher bids and then, if none is forthcoming, announce in some clear and unequivocal manner that the highest bid is accepted and the sale completed. "The auctioneer's search for higher bids ends when he indicates by any means which would be evident to an attentive bidder, that the sale is over. He may not thereafter reopen the bidding." *Holston* v. *Pennington*, 225 Va. 551, 557, 304 S.E.2d 287, 290 (1983). We hold that the trustee's conduct in this case fully complied with those requirements.

## V. Binding Contract

Yaffe contends that even if the auction was properly completed, there still remained an issue of fact for the jury with regard to the question of mutual assent. He says that he had been told by an employee of Heritage, in a telephone conversation, that the high bidder at the sale would get the property "free and clear," that he attended the sale under that impression, that he had not noticed or understood the terms contained in the advertisement, and that he had not heard the trustee's "soft-spoken" announcements at the sale. He argues that the jury should have decided whether there was mutual assent to the terms of the contract purportedly made by the acceptance of his bid.

In *Definite Contract*, we were presented with a similar set of facts. Although the advertisement of a foreclosure sale clearly stated that the sale would be subject to a prior deed of trust, and that fact was announced at the sale, the high bidder later contended that she had been unaware of the prior lien and refused to settle. When sued for a deficiency resulting from a resale at her risk, she asked to submit the issue to the jury upon an instruction to the effect that if she believed she was bidding upon the property free of liens, but the property was actually being sold subject to a prior lien, then no contract was ever formed.

Holding that the court properly refused her proposed instruction, we said: "Where the terms and conditions of an auction sale are plain and unambiguous and are plainly announced at the time and place of sale they are binding upon a purchaser at the sale, *whether he heard them announced or not and though he may not have understood them.*" 158 Va. at 782, 164 S.E. at 565 (citations omitted) (emphasis added). That holding is dispositive of Yaffe's contention, and the trial court correctly ruled that no issue of fact remained to be determined by the jury.

## VI. Statute of Frauds

Yaffe finally contends that the trial court erred in overruling his demurrer, which interposed the defense of the statute of frauds. He points out that a trustee's foreclosure sale results in a contract for the sale of real property, which is unenforceable under Code § 11-2(6) unless evidenced by a writing signed by the party to be charged or his agent. He argues that the trustee could not be deemed his agent, because the trustee was the seller, and thus the

opposite contracting party to the sale. Therefore, Yaffe says, the trustee's memorandum of sale could not serve as a writing evidencing that contract, signed by Yaffe's agent, sufficient to take the case out of the statute of frauds.

■ It is true that a trustee executing a deed of trust on real estate has fiduciary duties to both the creditor and the debtor, *Smith* v. *Credico Industrial Loan Co.*, 234 Va. 514, 516, 362 S.E.2d 735, 736 (1987), *Whitlow* v. *Mountain Trust Bank*, 215 Va. 149, 152, 207 S.E.2d 837, 840 (1974), and that he occupies the technical position of the seller at the sale. The duties of an auctioneer, however, go further.

> [F]or a brief time, from the fall of the hammer until the closing of the sale, an auctioneer is the agent both of the buyer and of the seller. If he makes any written notation of the buyer's name and the amount of his bid for the property sold during this time, it is a sufficient memorandum to take the case out of the statute of frauds.

*Holston*, 225 Va. at 558, 304 S.E.2d at 291 (citing *Brent* v. *Green*, 33 Va. (6 Leigh) 16 (1835)).

■ A trustee executing his power of sale under a deed of trust may employ an auctioneer to cry the sale, and this is frequently done. In such a case, the auctioneer becomes, for the brief period of time described in *Holston*, the agent of both buyer and seller. But a trustee is not required by law to employ an auctioneer, and unless precluded from so doing by the terms of his deed of trust, is at liberty to "cry" the auction sale himself. In that event, he assumes the role of the auctioneer and must perforce assume the auctioneer's position of agency for buyer as well as for debtor and creditor, during the "brief time" described above.

■ In the present case, the trustee, acting in the additional capacity of auctioneer, became the agent of Yaffe from the figurative "fall of the hammer" until closing of the sale. Accordingly, the memorandum of sale he executed was a sufficient writing, signed by the agent of the party to be charged, to take the case out of the statute of frauds. *See Smith* v. *Jones*, 34 Va. (7 Leigh) 165, 170-71 (1836).

Because we find no error in the judgment, it will be

*Affirmed.*