**CARTER COAL CO. v. LITZ et al.**

**No. 5170.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1944.

W. P. Hazlegrove, of Roanoke, Va., and Herbert J. Jacobi, of New York City, for appellant.

E. L. Hogsett, of Huntington, W. Va., for appellees.

Before SOPER and DOBIE, Circuit Judges, and WARING, District Judge.

DOBIE, Circuit Judge.

Carter Coal Company (hereinafter called Carter) instituted, in the United States District Court for the Western District of Virginia, a civil action against A. Z. Litz, Jr., and others (hereinafter collectively, called Litz). Carter, as vendee, sought (among other forms of relief) against Litz, as vendors, the cancellation of a contract (at least partially performed) of sale of underwater seams of coal in a tract of land of 2,400 acres in McDowell County, West Virginia, and the recovery by Carter from Litz of the cash purchase price already paid, together with certain negotiable notes and other evidences of the deferred purchase price. The theory of Carter's case was that, on the ground of fraud (or fraudulent concealment) by Litz of a serious defect in the title of Litz to the

land in question, Carter (in fact and in law) had actually rescinded the whole transaction. Carter, in connection with this alleged rescission by it, tendered to Litz a reconveyance of the tract of 2,400 acres, and Carter further offered to put Litz in statu quo.

The District Court, sitting without a jury, filed a comprehensive opinion dealing at length with the complicated set·of facts and the many issues raised in the case. On practically every important question, the District Court found against Carter, and judgment was entered dismissing the complaint. Carter has duly appealed.

Though we shall base our decision on a single point, admitted by Carter's counsel as the crux of the whole case, a brief statement of the more salient facts involved in the transactions between Carter and Litz, seems to be in order.

During the latter part of 1939, A. Z. Litz, one of the individual defendants in the instant case, entered into negotiations for the sale of the 2,400 acre tract of land to Carter, in which A. Z. Litz owned the largest single share. After certain preliminary matters had been cleared away, the parties agreed as to the terms of sale, subject to an examination and approval by Carter of the title of A. Z. Litz to the land. It was further agreed that the matter should be closed not later than June 30, 1940.

Subsequently, Carter's title examiner (hereinafter called the examiner) reported a defect of title as to 1,051 acres (hereinafter called the 1,051 acre tract) of the 2,400 acre tract. A. Z. Litz had purchased the land at a judicial sale, and the examiner thought that, as to the 1,051 acre tract, there was still outstanding an interest in the heirs of one W. L. Taylor, Sr. The parties then agreed that A. Z. Litz would undertake to secure a quitclaim deed from the Taylor heirs covering any interest they might have in this 1,051 acre tract. In anticipation of the securing of such a quitclaim deed, A. Z. Litz and the other defendants (under date of June 28, 1940) executed a deed conveying the entire 2,400 acre tract, and Carter executed checks for part of the purchase price, notes for the balance, and a deed of trust to secure the payment of the notes.

Negotiations with the Taylor heirs, by interviews and correspondence, in attempts to secure the requisite quitclaim deed, not only met with no success at that time but gave little promise of any future success. After further discussions between Carter and A. Z. Litz, it was agreed that the deed of June 28, 1940, conveying the entire 2,400 acre tract, (and the attendant papers) be cancelled, that the tract be handled as two parcels (the 1,051 acre tract and the 1,349 acre tract), and conveyed in separate deeds; but that, as to the 1,051 acre tract (on which the examiner had discovered an alleged defect of title), the deed, purchase money notes, and the deed of trust securing the payment of these notes, should be placed in escrow for a period of time, not to exceed three years, during which A. Z. Litz should take proper steps to clear the title to this 1,051 acre tract.

Pursuant to this agreement, in an effort to clear up the title, a suit (under the style of Sperry et al. v. Taylor et al.) was instituted on June 21, 1941, in the Circuit Court of McDowell County, West Virginia. In this suit Carter was joined as plaintiff with Litz and the Taylor heirs were made defendants. On September 2, 1941, the Taylor heirs filed an answer (in the nature of a cross-bill) in which they claimed not only an interest in the 1,051 acre tract (on which the examiner had reported) but also a very substantial interest in the entire 2,-400 acre tract. This latter claim (in the entire tract) .was based on (1) alleged agreements under which A. Z. Litz bought the lands at the judicial sale; (2) certain written contracts purporting on their face to be options under which the Taylors might re-purchase the lands (or an interest therein) and (3) certain conduct on the part of A. Z. Litz after the execution of the written option contracts. As a result of all this, the Taylor heirs claimed in their answers that the title of A. Z. Litz (to the entire tract) acquired at the judicial sale was affected with "a mortgage or trust" so that the Taylor heirs still had a subsisting right to redeem the lands. Incidentally, the period of time given to the optionees under these option agreements had expired before the beginning of the negotiations between Carter and A. Z. Lits, and these option agreements had never been recorded.

Soon after the filing of the answer (in the suit of Sperry v. Taylor) by the Taylor heirs, Carter notified Litz that Carter had rescinded the entire transaction and Carter (with a tender of a reconveyance and an offer of a restitution of the status quo)

demanded a return of the purchase money paid by Carter and of the notes given by Carter for the balance of this purchase price. On October 28, 1941, when Litz had utterly failed to comply with Carter's demands, Carter filed the instant action in the District Court. The ground upon which Carter asserted that it had rescinded the entire transaction was the alleged fraud, or fraudulent concealment, by Litz, as to the claim of the Taylor heirs (set up in their answer in the suit of Sperry v. Taylor) to the entire 2,400 acre tract.

The District Court, in its opinion, discussed at length "the questions of determining importance", which, four in number, were thus stated:

"I. Whether the claim by the Taylors to an interest in the entire 2,400 acres as asserted by them in their answer in Sperry v. Taylor was of such substance as to raise a material question as to the title.

"II. Whether the Carter Coal Company had knowledge of the Taylor claims prior to closing the contract with defendants in October, 1940.

"III. The effect on plaintiff's rights of the purported perfection of the title subsequent to institution of the suit.

"IV. Whether any defects in the title were in fact cured by the settlement which the grantors effected with the Taylors."

Of these, we discuss only Question II. Counsel for Carter concede that its rights asserted in the instant action rest solely and exclusively upon the alleged fraud or fraudulent concealment of the Taylor claims to the entire 2,400 acre tract (as set up in the answer of the Taylor heirs in the suit of Sperry v. Taylor) and Carter's counsel freely admit that the charge of fraud, or fraudulent concealment, completely fails, if Carter had notice of these claims prior to the closing of the contract in October, 1940.

■ The District Court filed no separate, formal findings of fact and conclusions of law. See Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Yet, in its lengthy opinion, the District Court embodied specific findings on all the material facts in the case and set out adequate and extensive conclusions on all the important questions of law which were raised. Under these circumstances, particularly since we base our affirmance upon one clear finding on one fact (the knowledge by Carter of the Tay-

lor claims to the entire tract), it would be, we think, a futile gesture for us to follow a suggestion in Carter's brief and remand the case to the District Court for formal findings of fact and conclusions of law. Knapp v. Imperial Oil & Gas Products Co., 4 Cir., 130 F.2d 1, 3, 4.

Under Question II, dealing with the knowledge on Carter's part of the Taylor claims to the entire tract, the District Court, in its opinion, stated:

"While these options were never recorded and, therefore, did not come to the knowledge of plaintiff in its examination of the record title to the lands, it is asserted by defendants that the plaintiff, through its attorney and otherwise, had actual knowledge of the options and their contents prior to the time the contract for the sale of the lands was finally concluded in October, 1940. This is denied by the plaintiff. Much evidence was introduced on this question by both parties which it is both impracticable and unnecessary to recite. It is in sharp conflict but I am of opinion that the weight of the evidence indicates that the plaintiff did know of the options prior to closing the contract. By this it is not meant to imply that plaintiff at that time knew the full extent of the contentions which the Taylors later asserted in their answer in Sperry v. Taylor. But neither did the defendants know of such a claim at that time. The reasonable inferences from the evidence are that both parties knew of the options but that both considered them merely for what they were, namely, options long since expired under which no rights any longer existed.

"Under these circumstances there is no basis for a rescission on the ground of fraudulent misrepresentation or concealment on which plaintiff has grounded its claimed right of rescission."

■ Unless this finding of fact, as to Carter's knowledge of the Taylor claims to the entire tract, be "clearly erroneous", that finding is binding upon us. Federal Rules of Civil Procedure, Rule 52(a). We think the finding is not clearly erroneous and that it is supported by substantial evidence and that we are, accordingly, bound by the finding. The District Court did not (at this part of its opinion) discuss the evidence upon which this finding (of knowledge on Carter's part of the Taylor claims) was based. We think a brief analysis of some of this evidence should be set out and discussed.

This evidence deals chiefly with the knowledge of Carter's title examiner. This examiner (admittedly a lawyer of great ability and high character) testified flatly and squarely that he had no knowledge whatever (before the Taylor answer in the suit of Sperry v. Taylor) of the Taylor claims to the entire 2,400 acre tract (based on the option contracts and the conduct of Litz and Taylor, Senior, in connection with these contracts); that he (the examiner) knew only of the title defect (which he discovered and reported) to the 1,051 acre tract. On the other hand, Litz introduced three witnesses, St. Clair, J. N. Harman, Jr., and Judge M. O. Litz, who testified that the examiner did have knowledge of the Taylor claims to the entire 2,400 acre tract.

St. Clair stated: "I know positively that that letter was exhibited to Mr. Tucker (the examiner) within a very few days after it was written at Mr. Tucker's office in Welch, in the presence of Judge M. O. Litz." The letter referred to was the letter, dated August 2, 1940, from Taylor, Jr., to St. Clair, in which was set forth (without mention of any "mortgage or trust" theory) the Taylor claims to the entire tract as existing rights under the option contracts. And again St. Clair testified that the examiner "read that letter and reached the same conclusion we did that it didn't amount to anything"; and, further: "I have seen that option (the option agreement of April 17, 1930) in Mr. Tucker's hands dozens of times." And, when asked: "Did he (the examiner) know about that option at this conference in 1940?" St. Clair replied: "Yes, sir, because they referred to this option."

As to this same letter, J. N. Harman, Jr., testified that he first saw it in the office of Mr. Tucker (the examiner) a few days after the letter was written and that St. Clair, Judge M. O. Litz and the examiner were also present. When asked whether the examiner then saw the letter, Harman replied: "We all four saw and discussed the letter at that time."

Judge M. O. Litz (a brother of A. Z. Litz, and formerly a member of the Supreme Court of West Virginia) testified (as to this same letter) that the examiner had lunch at the Litz home, that "at the table someone mentioned the fact that this letter had arrived", that the party then adjourned to an office over the garage, and "We had this letter and, of course it was read and considered and then I tried to find out what these defects were that Mr. Tucker (the examiner) had raised." When asked: "Did Mr. Tucker on that occasion see and read that letter?" Judge Litz replied: "Yes, I think it was read by everyone and discussed, but I think Mr. Tucker (the examiner), or probably that accounts for his lack of recollection, he treated the letter as we did, very lightly, this claim of the Taylors'."

Counsel for Carter insist that the testimony of the examiner was clear and positive; while, in contrast, the testimony of St. Clair was evasive, that of Harman was contradicted by other parts of his testimony, and that of Judge M. O. Litz was indefinite. These same counsel point out, too, that a man of the wisdom and character of the examiner, if he had knowledge of the Taylor claims to the entire tract, would at least have mentioned these claims in his title report. Counsel for Litz insist, as some of their witnesses suggested, that the examiner was primarily interested in the record title and that he thought these unrecorded option contracts and the claims made by Taylor, Jr., in the letter of August 2, 1940, were so trifling and so lacking in validity as not to merit even mention in the examiner's report. These considerations, we think, were primarily for the trial judge, who, under all the surrounding circumstances (with which he was necessarily familiar) is the sole judge of both the credibility of the witnesses and the weight which is to be given to their testimony.

Perhaps it would be well to conclude with the closing paragraph of the District Court's opinion:

"After consideration of the extensive evidence in this case and of the thorough discussion by counsel of the legal principles involved, I am compelled to the feeling that in no aspect of the case does any consideration of equity, either in the legal or the lay conception of the term, lie with the plaintiff. The land here in question was purchased by the plaintiff with the expectation of future development at such time as mining operations conducted by plaintiff on adjacent land owned by it would be extended to this land. At the time of purchase it was not expected that mining operations would reach this land for from three to five years thereafter. Meanwhile the land was conveyed and the plaintiff placed in possession. No interference with

938

that possession has taken place; and there has been, of course, no interference with plaintiff's mining operations which, even in the absence of this dispute, would not yet have reached this land. The imaginative and unsupported allegations of the Taylors in their answer in Sperry v. Taylor constituted the only suggestion of any question of the title and this was not accompanied by any attempt to interfere with plaintiff's possession. The plaintiff has suffered no damage whatever and so far as the title was in question, the defendants have perfected it before the plaintiff was prepared to or intended to make use of the land. There is no threat to plaintiff's use of the property whenever it shall be prepared to use it and the court can see no reason for relieving the plaintiff from its contract. The complaint will be dismissed with costs in favor of the defendants."

It thus appears that the vendors and the adverse claimants have reached a settlement, which is doubtless the meaning, in the above-quoted extract from the District Court's opinion, of the statement as to the perfection of the title to the realty by the defendants. We place our affirmance of the judgment, however, as we have previously indicated, *solely and singly* upon the ground that the finding of the District Court to the effect that Carter had knowledge of the Taylor claims to the entire tract is not "clearly erroneous" and, therefore, under Federal Rules of Civil Procedure, Rule 52(a), we cannot set aside this finding of fact.

We affirm the judgment of the District Court.

Affirmed.