## Richmond

### J. C. SNIDOW v. LLOYD WOODS.

January 21, 1957.

Record No. 4601.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*William R. L. Craft, Jr.* and *William J. McGhee*, for the plaintiff in error.

*Bentley Hite*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

J. C. Snidow, sometimes hereinafter referred to as the plaintiff, filed a motion for judgment against Lloyd Woods, sometimes herein-

after referred to as the defendant, to recover the sum of $800 with interest and attorney's fee, due on a note in that amount bearing interest at the rate of 5% per annum, dated March 1, 1945, signed by Woods, payable two years after date to J. C. Snidow, O. W. Altizer and J. B. Spiers, and by Altizer and Spiers endorsed and transferred to Snidow.

The defendant, Woods, filed an answer averring that the note had been paid. He also filed a special plea of res judicata alleging that in a decree entered in the chancery suit of *Woods* v. *Durham*, lately pending in the same court, it had been adjudicated that the note had been paid. The plea of res judicata was stricken by the trial court, no exception was taken to that ruling, and we are not concerned with it. There was a trial by a jury which resulted in a verdict and judgment for the defendant. We granted the plaintiff, Snidow, a writ of error.

[■] Since the execution and delivery of the note were admitted in the court below, the principal question presented on the appeal is whether there is sufficient evidence to warrant the finding that the note was paid before suit thereon was brought. The defendant's evidence tended to show that the note was paid to John Durham, an agent and employee of the plaintiff. The plaintiff contends that the evidence fails to show that the note was actually paid to Durham, but if it does, it falls short of showing that Durham was the plaintiff's agent, duly authorized to accept such payment.

The factual background is this: On March 1, 1945, Snidow, Altizer and Spiers sold and conveyed to Woods a tract of land for $3,600. Woods paid $2,000 of the purchase price in cash and for the balance gave his two notes of $800 each, dated March 1, 1945, bearing interest at 5%, payable to Snidow, Altizer and Spiers one and two years after date, respectively. The note payable one year after date was transferred by the payees to Altizer, was paid by Woods, cancelled, and returned to him.

The other note, payable two years after date, was transferred to Snidow and is the instrument on which the present suit was brought. It was offered in evidence at the trial and carries no mark or notation showing that it had been paid or cancelled. Snidow testified that when the note fell due he did not insist upon its payment but allowed Woods an extension. The time of the extension was not stated. He further testified that the note had not been paid either to him or to anyone authorized by him to receive payment thereof. He said that

from the time he received the note it had been continuously in his or his attorney's possession.

Woods testified that he paid the note to Snidow's bookkeeper, John Durham, "in J. C. Snidow's office when it became due," by a check for approximately $900. He further said that Durham, who was his "extra good friend," told him that he would give him the note later but in the meanwhile wanted to retain it to "charge it off as income tax." However, Durham did not deliver the note to him nor did he give him any receipt for his payment. There is no evidence that Woods made any further demand on Durham for the note or a receipt. Nor is there any evidence that he ever told Snidow that he had paid the note to Durham, who died several years before the present suit was instituted.

Woods further testified that he was unable to produce his cancelled check showing payment because all of his business papers had been destroyed when his house was burned in 1951 or 1952. It was pointed out in cross-examination that Woods had testified in the *Woods* v. *Durham* chancery suit that he paid the note in *cash* to "John Durham and J. C. Snidow, Jr." He made no attempt to explain these discrepancies. Nor did he explain how he was able to preserve the cancelled note which he had paid to Altizer, and unable to preserve the cancelled check evidencing the payment to Durham.

Snidow admitted that Durham had been his bookkeeper, had assisted him in his canning business, and had made some disbursements for him. But he was clear and positive in his testimony that he had not authorized Durham to receive payment of this note or any other obligation due to him. Nor is there any evidence to the contrary. It was developed on cross-examination in this suit that in the *Woods* v. *Durham* chancery suit Snidow had given a confused and inaccurate statement of the transaction in which the purchase-money notes had been executed and delivered. But it further appears that in that suit Snidow had testified with like firmness that this note had not been paid.

J. C. Snidow, Jr., testified that Woods had not made payment of the note to him. Nor is there any evidence that he (J. C. Snidow, Jr.) was authorized to receive the payment thereof.

Woods testified that although he knew the plaintiff, Snidow, quite well and saw him frequently, Snidow made no demand on him for payment of the note until suit thereon was brought. It is argued that this and the delay in bringing the present suit indicate that Snidow

knew the note had been paid. But Woods admitted on cross-examination that he was present when Snidow testified in 1949 in the *Woods* v. *Durham* chancery suit that this note had not been paid. Thus, he knew at that time that Snidow had taken that position. It will be observed that this was two or three years before the fire in which Woods said that his cancelled checks had been destroyed.

It is stated in the plaintiff's brief, and it is a fair inference from the record before us, that the institution of the present suit on the note was delayed pending the outcome of the *Woods* v. *Durham* chancery suit which was pending from 1949 to 1954. The record in that suit is not incorporated in the record in the present suit, but it appears from the cross-examination of both Woods and Snidow in the present suit that although Snidow was not a party to the chancery suit, one of the collateral issues there was whether this note had been paid. Snidow testified in that suit that the note had not been paid, while Woods testified that it had.[1]

Shortly after a final decree had been entered in the chancery suit the present action on the note was instituted. In the meantime the note had been in the hands of Snidow's attorney for collection since 1948 or 1949.

Payment is, of course, an affirmative defense and "where an indebtedness or obligation to pay has been established, the burden of proving payment is on the party who alleges it." 70 C. J. S., Payment, § 93, p. 298; *Burton's Ex'r.* v. *Manson*, 142 Va. 500, 507, 129 S. E. 356, 358.

It is well settled that "The burden rests on the party making payment to show that the one receiving payment was authorized to do so. Thus, if the person to whom payment of commercial paper is made does not have possession thereof, the burden rests upon the payor to prove the existence and extent of authority, actual or ostensible, to receive such payment, or that the money paid actually reached the holder of the security. One making payments to an agent has the burden of showing that the latter had either express or apparent authority to receive such payments upon behalf of his principal." 40 Am.

---

[1] The briefs on both sides give this as the origin and purpose of that suit: Because of domestic trouble, Woods did not record the deed dated March 1, 1945, by which Snidow, Altizer and Spiers had conveyed the property to him. In October, 1946, Woods returned the deed to the grantors who at his request and without further consideration executed another deed, dated March 1, 1945, conveying the property to John Durham. Upon Durham's death intestate around 1949, Woods instituted and successfully prosecuted the chancery suit against Durham's widow and heirs to compel the conveyance of the property to him.

Jur., Payment, § 279, p. 895. See also, 8 Am. Jur., Bills and Notes, § 845, p. 489; 11 C. J. S., Bills and Notes, § 662-f, p. 110.

The same principle is thus expressed in *Wooding's Ex'x.* v. *Bradley's Ex'r.*, 76 Va. 614, 617, 618: "The burden of proof, that a payment made to another than the owner or holder of the evidence of the debt is a lawful payment, is upon the party who makes such payment. If the debtor makes the payment to a party who does not have in hand the obligation, he takes the risk of his authority to make the collection."

■ In the present case, while the matter is not free from doubt, we may assume without deciding that the evidence is sufficient to sustain the finding that the defendant, Woods, actually paid the amount of the principal of the note and accrued interest to Durham. Yet it is clear that the defendant has not borne the burden of proving that Durham was the agent of the plaintiff, Snidow, duly authorized to accept payment of the obligation. Certainly, there is no evidence of express authority to make such collection. Nor is there evidence of implied or apparent authority to do so. There is no showing that Durham had previously or customarily made collections for Snidow. There is no indication that he had made similar collections of Woods. There is no evidence that Snidow did or said anything to lead Woods to believe that Durham was authorized to make this collection.

Moreover, Durham did not have possession of the note which is the usual and customary indicium of the authority to accept payment thereof. Hence, in making payment to him, Woods took the risk of Durham's authority to make collection. *Wooding's Ex'x.* v. *Bradley's Ex'r.*, *supra.* Indeed, it is clear from Woods' own testimony that he made the payment to Durham, not because he thought Durham had the authority to make the collection and discharge the debt, but because Durham was his trusted friend whom he relied upon to deliver the proceeds to Snidow and return the note to him (Woods). This was a risk which Woods and not Snidow assumed.

For these reasons the judgment is reversed and the verdict of the jury set aside. A final judgment will be here entered in favor of the plaintiff, Snidow, against the defendant, Woods, for the principal amount of the note, $800, with interest thereon at 5% per annum from March 1, 1945, until paid, a 10% attorney's fee, and costs.

*Reversed and final judgment.*