## Richmond

M. H. Kaplan and Bernard Glasser v. Robert D. Ruffin, Trustee, and Richard W. Ruffin.

January 15, 1973.

Record No. 7975.

Present, All the Justices.

*Bernard Glasser* (*Glasser and Glasser*, on brief), for appellants.

*William L. Parker*, for appellees.

Cochran, J., delivered the opinion of the court.

We are here concerned with the question whether Robert D. Ruffin, trustee under a second deed of trust, acted properly in selling the property and disbursing the proceeds.

By deed dated May 10, 1963, and duly recorded, Maurice Collette, unmarried, conveyed two lots with improvements thereon, known by street numbering as No. 1407 and No. 1409 West Forty-Sixth Street in the City of Norfolk, to Robert D. Ruffin, trustee, in trust to secure a note payable to Bearer in the principal sum of $4,000 fifteen months after date, with interest from date. The note was held by Richard W. Ruffin, Robert D. Ruffin's brother and law partner. The deed of trust recited that it was made subject to the lien of two prior deeds of trust, one on each of the two described properties, securing notes held by Southern Aid Life Insurance Company, Inc.

On February 18, 1966, M. H. Kaplan and Bernard Glasser docketed a judgment against Collette in the sum of $7,741.41, with interest, attorney's fees and costs. The lien of this judgment, reduced by credits to $5,646.12, was inferior to the liens of the three deeds of trust and of another judgment.

The Ruffins learned that the City of Norfolk was interested in acquiring the Collette property for the use of Old Dominion University and had appraised the property at $17,750. In January, 1967, they persuaded Collette to give the City an option to purchase the property for this amount. The City and Robert Ruffin, aware that Collette could not convey good title because of the liens securing debts in excess of the purchase price, agreed that if the property were advertised for sale under the second deed of trust, which was then in default, the City would bid $17,750 for it free of all liens. Robert Ruffin agreed to charge a trustee's commission of $200 and Collette consented to the proposed foreclosure sale.

Kaplan and Glasser did not agree to the proposal nor were they asked to do so. Although Southern Aid was not specifically asked to consent to the proposed sale under the second deed of trust, there was the unrestricted right to anticipate payment of the notes secured by the first deeds of trust. At Robert Ruffin's request prior to the sale, Southern Aid informed him of the amount required to pay off principal and interest of the notes.

The property was advertised for sale by Robert Ruffin, trustee, by advertisement that did not refer to the first deeds of trust incumbering the property. At the foreclosure sale on March 8, 1967, before offering the property, the trustee announced that the property was subject to prior deeds of trust and that he would pay off and release these "out of the proceeds of sale as agent for the purchaser." No request was made that the property be offered for sale on any other basis. The bidding was then opened with the City bidding $17,750 and, there being no other bids, the property was knocked down at that figure. Promptly thereafter checks drawn on the law firm's account were forwarded to Southern Aid for $13,548.48 in payment of the first deed of trust indebtedness.

On March 13, 1967, Southern Aid cancelled the Collette notes and sent them to Robert Ruffin who released the first deeds of trust of record. On March 14, 1967, the City delivered to him its check for $17,750, conditioned upon release of the first deeds of trust, in exchange for the trustee's deed dated March 8, 1967, conveying title to the City free and clear of liens. Subsequently, a deed of correction

was executed by the trustee which set forth in greater detail the manner in which the sale was conducted and the proceeds disbursed.

Kaplan and Glasser, learning of the foreclosure sale, on March 15, 1967, notified Robert Ruffin that, as trustee under the second deed of trust, he could only sell the property subject to prior liens, that he must apply the sale proceeds on the second deed of trust obligation and liens subordinate thereto, including theirs, and that he could not use any of the proceeds to pay off prior liens. The trustee, who had already made distribution, filed a report with the Commissioner of Accounts showing that he had sold the property free and clear of liens for $17,750, that he had acted as agent for the City in receiving $13,560.54 thereof and paying the same to discharge and release the first deed of trust indebtedness, and that, after paying the expenses of sale, he had paid the balance of $3,775.38 to Richard Ruffin on account of the Bearer note in the principal sum of $4,000.

Kaplan and Glasser filed their petition in a declaratory judgment proceeding asking for an adjudication of their rights. The matter was referred to a commissioner in chancery who, after hearing evidence and considering the authorities submitted by counsel, reported that the trustee had not acted improperly in selling the property and disbursing the proceeds. Exceptions to the commissioner's report filed by Kaplan and Glasser were overruled by the trial court and the report was confirmed by final decree entered September 27, 1971. We granted Kaplan and Glasser an appeal.

The uncontradicted evidence shows that the fair market value of the Collette property did not exceed $17,750. Whether it would have brought that much if the City had resorted to condemnation proceedings to acquire good title is by no means certain. The Ruffins, in persuading Collette to approve the City's offer, expressed concern that the property might bring less in condemnation.

Assuming, as we do, that $17,750 was a fair price for the property, lien debts subordinate to the second deed of trust were uncollectible against this property in the event of sale under the first deeds of trust, sale under the second deed of trust subject to prior liens, or acquisition by the City through condemnation. The selling price was substantially less than the aggregate amount of principal and interest payable on obligations secured by the first and second deeds of trust. Moreover, if foreclosure had been made under the first deeds of trust, (the commissioner was unable to determine whether Collette was in default on the Southern Aid notes), the trustee's commissions on the sale would have been $887.50 rather than the $200 paid to Robert

Ruffin as trustee. The judgment of Kaplan and Glasser was not even next in priority to the second deed of trust; it was junior to a judgment of one Barge in the amount of $1,400, with interest, fees and costs.

There is nothing in the record to suggest that the Ruffins were attempting either by themselves or in concert with others to deprive Kaplan and Glasser of any rights as judgment lien creditors. The evidence does show, of course, that the Ruffins were exerting themselves to salvage all they could on the $4,000 note held by Richard Ruffin on which Collette had been in default for almost four years.

The commissioner in chancery and the trial court concluded that *Schmidt & Wilson* v. *Carneal,* 164 Va. 412, 180 S.E. 325 (1935), and *Seward* v. *New York Life Ins. Co.,* 154 Va. 154, 152 S.E. 346 (1930), relied upon by Kaplan and Glasser, were not controlling under the facts of this case. The commissioner reported that Richard Ruffin paid the first deed of trust indebtedness to Southern Aid after the foreclosure sale and was subrogated to the lien of Southern Aid and that the trustee properly reimbursed him for his payment. In his letter opinion dated August 20, 1971, the chancellor held that Richard Ruffin was entitled to be reimbursed "for the amount which he paid to satisfy the first deeds of trust." The final decree recited that Richard Ruffin was "the lawful holder of that indebtedness" secured by the first deeds of trust.

Kaplan and Glasser maintain that the trustee sold the property subject to prior liens for $17,750, which was its fair market value free of liens. They rely on the general rule that the trustee under a second deed of trust must sell subject to prior incumbrances, as he can only sell the equity of redemption in the property. *Schmidt & Wilson* v. *Carneal, supra,* 164 Va. at 416, 180 S.E. at 326. Upon a sale of the equity of redemption the proceeds, after payment of costs of sale and the debt secured by the second deed of trust, must be applied to lien debts subsequent to the second deed of trust, and any balance remaining thereafter must be paid to the grantor. *Seward* v. *New York Life Ins. Co., supra,* 154 Va. at 165, 152 S.E. at 349; *see* Code § 55-59(13), as amended in 1970, after the distribution of sale proceeds now in controversy occurred.

The reasons for these rules are apparent. A trustee can sell only what he has. In the case of a trustee under a second deed of trust he must sell subject to prior liens. Therefore, the purchaser taking subject to prior liens pays what he thinks the property is worth over and above those liens. Having been paid this purchase price

for the property based on the understanding that prior liens remain outstanding the trustee may not defraud subsequent lienholders by using any part of the proceeds to pay off prior liens.

In *Schmidt & Wilson* the trustee under a subordinate deed of trust sold the property free of prior liens and paid these lien debts out of the sale proceeds, but we held that he was entitled to commissions only on that part of the purchase price in excess of the prior lien indebtedness. In *Seward* we went behind the deed recital of consideration to determine the actual consideration for an equity of redemption.

Here the trustee sold the equity of redemption, not for $17,750 but for $4,189.56, being $17,750 less $13,560.54 required to pay and release the first deed of trust obligations. He and the City were in agreement that the bid for the property at the sale was $17,750, conditioned on conveyance free of prior liens. The property was so offered, with full disclosure, upon the understanding that the purchase price included the amount required to discharge the prior liens, a procedure which we recognized but found it unnecessary to pass on in *Seward*. So the trustee not only received the purchase money for the property subject to prior liens but also the money to fulfill his commitment to the purchaser to satisfy those liens. As there was not enough realized from the sale under these conditions to pay in full the second deed of trust indebtedness, nothing was available for junior lienholders.

Other and better ways of achieving their legitimate objective could have been utilized by the trustee and the City. For example, Richard Ruffin could have bought the first deed of trust obligations prior to the sale, or the property could have been expressly offered subject to prior liens and the City required to assume the responsibility for these liens. Admittedly, the bid at a sale pursuant to a second deed of trust should be a net bid, excluding prior lien indebtedness. 1 *Glenn on Mortgages* § 109, at 659 (1943). But we are unwilling to permit form to prevail over substance by holding that the procedure here followed by the trustee was invalid. The trustee assumed the risk of being unable to convey the property free of liens. If for any reason release of the first deeds of trust could not have been made, the City could have refused to consummate the sale.

We hold that where the terms were fully disclosed at the sale, the trustee could at his risk agree to sell the property free of prior liens with the understanding that he would discharge the liens out of the purchase money. That the prior lien indebtedness was paid before

the purchase money was received is of no significance. It was paid pursuant to an understanding between the trustee and the City without prejudice to the rights of subordinate lien creditors. Under our view of the case it is unnecessary to determine whether Richard Ruffin was entitled to be subrogated to the lien of Southern Aid. The chancellor found that he paid the first deed of trust obligations and was entitled to be reimbursed by the trustee. We find no reversible error in this ruling.

*Affirmed.*