In re George T. ROSS, Debtor.

**The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Plaintiff,**

v.

**George T. ROSS, Defendant.**

**Bankruptcy No. 92–34475–S.
Adv. No. 92–3194–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 22, 1995.

Peter W. Runkle, Obenshain, Hinnant & Runkle, Richmond, VA, for debtor/defendant.

S. Miles Dumville, Hazel & Thomas, P.C., Richmond, VA, for plaintiff.

_____

### SUPPLEMENTAL MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court on the motion of The Riggs National Bank of Washington, D.C. ("Riggs"), filed herein on September 2, 1994, to amend this Court's Memorandum Opinion, which was entered on August 30, 1994, and on Riggs' motion for entry of a final order, filed herein on October 3, 1994. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334.

*FINDINGS OF FACT*

The facts are set forth in this Court's August 30, 1994 Memorandum, and need not be repeated in full here. To summarize, Riggs was the issuer of a Letter of Credit ("LoC") for which a reimbursement agreement was guaranteed by George T. Ross ("Ross"). Ross was a general partner of Plaza One Associates ("Plaza"), builder of the Richmond Airport Hilton Hotel ("The Hotel"). The project was financed by issuing bonds secured by a first deed of trust on the Hotel. The LoC was to be drawn upon if Plaza did not make its required payments on the bonds.

In addition to Ross' guaranty, the LoC was secured by a second deed of trust on the hotel. After several draws on the LoC, and upon default under the terms of the LoC, Riggs foreclosed under its second deed of trust. RBV, Inc. ("RBV"), a wholly-owned subsidiary of Riggs, bought the property at the foreclosure sale for $10,000.00, taking the property subject to the existing first deed of trust. Riggs filed a complaint in this Court to determine the dischargeability of the debt owed it by Ross. Following a hearing on the dischargeability complaint, this Court, in its Opinion of August 30, 1994, 180 B.R. 121 held that:

> Ross's outstanding indebtedness to Riggs should be considered nondischargeable after deducting therefrom such credits received by Riggs as a result of the liquidation of the asset, by it or its subsidiary RBV, which were properly credited to the balance due under the guaranty by Ross. The Court chooses to allow the parties to work together to find the correct amount of Ross's outstanding indebtedness.

(Mem. Op. at 130).

Within two days of the Court's entry of its Memorandum Opinion, Riggs filed its motion to amend. Pursuant to F.R.Civ.P. Rule 59, which is applicable to bankruptcy cases by way of F.R.Bankr.P. Rule 9023, this Court granted Riggs' motion to amend during an October 17, 1994 hearing on Riggs' motion for entry of final order.

The amendments to the August 30, 1994 Opinion are as follows:

(a) The text of footnote 4, page 124, is replaced by the following:

RBV eventually sold the property to RIC Partners L.P. for a gross sales price of $4.7 million dollars.

(b) The last three sentences of the first paragraph of page 127 are replaced with the following:

The Court is also unsure as to the effect on Ross's indebtedness of the $4.7 million dollar sale by RBV to RIC Partners L.P. It is possible that Riggs would receive the entire $4.7 million from its subsidiary RBV and collect $8.3 million from Ross, thereby receiving about $13,000,000 on a debt that had an original principal balance of about $7,700,000.

At that same October 17, 1994 hearing, the Court learned that the parties were unable to work together in the manner anticipated by the Court in its August Opinion. Upon consideration of the parties' additional memoranda and oral argument on the issue of the amount of indebtedness, this Court permitted the parties some additional time to reach an agreement. The parties advised the Court in November that a settlement was being negotiated. By December, however, no agreement had been reached. After long deliberation on this matter, the Court now acts upon the Motion of Riggs for the entry of a final order.

### CONCLUSIONS OF LAW

■ This Court's initial concern was that the subsequent sale of the hotel by a Riggs subsidiary without crediting the proceeds to Ross's guaranty obligation would result in a windfall to Riggs. (See Mem. Op. at 127, as amended). Upon further consideration, the Court is not certain that any windfall occurred. The sale to RIC was for $4.7 million dollars, $3.7 million of which was in the form of a loan to the purchaser. Only $1 million was received in the form of cash, and that amount might not have covered the expenses of sale. The Court has no evidence as to amounts, but it is conceivable that Riggs or RBV incurred expenses in completing, marketing and selling the property. Ross has conceded, and both parties agree, that the subsequent sale price of the property has no

bearing upon Ross's obligation to Riggs. Ross cites a Maryland case, *Walton v. Washington County Hospital*, 178 Md. 446, 13 A.2d 627 (1940), as persuasive authority. The *Walton* court stated:

The measure of liability of a guarantor of a mortgage is established after the amount of the deficiency is determined by the foreclosure ... the indemnity contemplated by the guarantor is ordinarily the deficiency determined by the auditor's report ... it is not to be limited to the mortgagee's ultimate loss.

*Id.* 13 A.2d at 629. The price that the foreclosure sale purchaser may receive through a subsequent sale does not determine the amount of the deficiency.

■ Ross maintains that no obligation survived the foreclosure sale because the bid price was $10,000.00 plus the amount of the debt, rather than the $10,000.00 bid recited in the deed and settlement documents. Ross reaches this conclusion by relying upon an inconclusive notation found in the margin of the deed and an even less conclusive statement of a bank officer given during testimony at the original hearing on this matter. As a legal basis for his conclusion that Riggs' bid at the foreclosure sale must necessarily include the amount of Ross's indebtedness, Ross relies solely upon *In re Carter*, 56 F.Supp. 385 (W.D.Va.1944). In *Carter* the Court stated:

But in any public sale of mortgaged property the creditor, for his protection, may bid at the sale and may apply the amount of his debt upon his bid. If some third party bids more than the amount of the debt secured, then the creditor will be paid in full from the proceeds of the sale. **If the creditor is forced to buy in the property at the amount of his debt, or less, he has acquired the property in lieu of his debt.**

*Id.* at 388 (emphasis added). While this language seems favorable to Ross, the *Carter* case does not offer support for Ross's argument. The language cited above is taken out of context, and is part of a general discussion of the law's gradual recognition of a period of redemption. In addition, the language seems

to suggest that a creditor is not entitled to a deficiency judgment. This is not the state of the law, and Ross does not contend that obtaining a deficiency judgment is improper. Proceeding to deficiency judgment is a lawful proceeding in Virginia. *See Hubard & Appleby v. Thacker*, 132 Va. 33, 110 S.E. 263 (1922).

This Court has found the bid price to be $10,000.00, with the property sold subject to the first deed of trust. The general rule has been stated that a "trustee under a second deed of trust must sell subject to prior encumbrances, as he can only sell the equity of redemption in the property." *Kaplan v. Ruffin*, 213 Va. 551, 193 S.E.2d 689, 691 (1973). The Court explained further:

> The reason for [the] rule [is] apparent. A trustee can sell only what he has. In the case of a trustee under a second deed of trust he must sell subject to prior liens. Therefore, the purchaser taking subject to prior liens pays what he thinks the property is worth over and above those liens.

*Id.* (citing 1 *Glenn on Mortgages* § 109 at 659).

In the *Kaplan* case, the bidder at the foreclosure sale under a second deed of trust chose to bid $17,750.00, an amount sufficient to pay off the first deed of trust obligation of $13,560.54. The Court ruled that the equity of redemption under the second was sold for $4,189.56 ($17,750.00 less the $13,560.54 required to pay and release obligation under the first). While the Court recognized that a better arrangement may have been for the property to have been sold subject to the obligation under the first, and for the bidder to have then satisfied the obligation under the first, the sale was permitted.

The current case is much different than *Kaplan*, however. While Riggs sold the hotel at a foreclosure sale under the second deed of trust, RBV did not choose to bid an amount including the obligation under the first. The first deed of trust remained in place until some ten months after the foreclosure sale. Riggs argues correctly that as of the time of the foreclosure sale, the holder of the first deed of trust maintained all of its rights. The property was worth less than the amount of the obligation under the first, making the equity of redemption under the second deed of trust valueless. RBV's bid was $10,000.00 for a property interest that was worth nothing at the time of the sale, given the lack of equity. That bid was adequate, given that the sale was made under a second deed of trust foreclosure sale.

What was also initially troubling to this Court was the concept that the first deed of trust, which secured the bond obligations, and the second deed of trust, which secured the LoC, appear to have been linked to the same obligation. The obligation under the second arose only as a result of draws made against the LoC upon default of the bond obligation. In other words, each draw upon the LoC increased the obligation under the second as it decreased the obligation under the first. This is less troubling, however, when it is remembered that the obligation of Ross is a guaranty of payments made by Riggs on behalf of Plaza under the Letter of Credit rather than an obligation under a mortgage. The first trust/second trust relationship is not at issue. At issue is the amount owed under the terms of the LoC. No matter what transpired at the foreclosure sale, Ross cannot argue that his obligation does not arise under the guaranty.[1]

The nondischargeable obligation owed under the Letter of Credit reimbursement agreement and guaranty is $7,771,875.00, together with interest as it accrued pursuant to the agreement. Of that amount, $212,969.44 has already been reduced to judgment by the District Court. That judgment allowed for post-judgment interest at the federal judgment rate. The remaining obligation for which judgment may be had is $7,558,905.56 together with interest as calculated pursuant to the agreement.[2] Post-judgment interest

---

1. The guaranty states at ¶ 2:
   This Guaranty shall be a continuing, absolute and unconditional guaranty and shall remain in full force and effect until all of the Obligations have been paid or provided for in full, at which time this guaranty shall terminate and be of no further force and effect. *Guaranty Agreement* at 2 (Joint Stip. Ex. 21).

2. The amount demanded in Riggs' complaint is $8,068,684.86. The Court assumes that this

should be calculated at the federal judgement rate.

■ Ross personally guaranteed that he would pay the amounts due under the reimbursement agreement. He bears the burden of showing the amount of any credit that should be applied against the indebtedness to Riggs. *Carter Coal Co. v. Litz,* 54 F.Supp. 115, 130 (W.D.Va.1943) *aff'd* 140 F.2d 934 (4th Cir.1944) (When a debtor claims to be entitled to credits against a debt, the burden is on the debtor to prove the credits to which he claims he is entitled; he cannot impose this burden upon the creditor.) *See also Snidow v. Woods,* 198 Va. 692, 96 S.E.2d 157 (1957).

Ross has not met his burden to show any credit beyond the bid at the foreclosure sale. If no credit is to be given for any subsequent sale of the property, as Ross agrees, the only other credit alleged is the amount bid at the foreclosure, sale. The Court again states its holding that amount of that bid was $10,-000.00, not the $10,000.00 plus the amount the debt under the first deed of trust alleged by Ross. Accordingly, the amount owed by Ross under the Guaranty is to be credited by $10,000.00. Judgment shall be entered against Ross and be fixed in the amount of $7,548,905.56 together with the interest that would have accrued under the guaranty agreement. Post-judgment interest shall accrue at the federal judgment rate. An order conforming with this Memorandum Opinion will be entered accordingly.

amount includes interest that has accumulated on the principal balance due.