JUSTICE LACY,
with whom JUSTICE KINSER and JUSTICE LEMONS join, dissenting.
Subsection (I)(5)(c) of Code § 55-79.84 specifically addresses the manner in which the proceeds of the non-judicial or public sale of a condominium unit are to be disbursed:
The unit owners’ association shall receive and receipt for the proceeds of sale, . . . and apply the same in the following order: first, to the reasonable expenses of sale; second, to the *53 satisfaction of all taxes, levies, and assessments, with costs and interest; third, to the satisfaction of the lien for the unit owners’ assessments; fourth, to the satisfaction in the order of priority of any remaining inferior claims of record; and fifth, to pay the residue of the proceeds to the unit owner or his assigns; . . .
There is nothing ambiguous about this provision. It clearly directs payment of an association’s assessment lien following satisfaction of the expenses of the sale and satisfaction of taxes, levies, and assessments. Nothing in this language suggests that the proceeds from the public sale must be used first to satisfy a first deed of trust. Normal rules of statutory construction require application of unambiguous provisions in accordance with the plain language of the statute. Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002).
The majority concludes, however, that this section cannot be applied as written because it creates a conflict with the priority of liens set out in subsection (A) of the section and because “common knowledge and experience” inform us that without such priority institutional lenders will no longer provide the “fuel” for condominium development. The majority states that “[i]t is the priority of the lender’s lien on a particular unit as well as the market value of the unit that establishes the lender’s security for the loan.” In my opinion, applying these Code subsections as written creates neither a conflict between them, nor the parade of horribles predicted by the majority.
What is the conflict the majority sees? Subsection (A) provides that sums unpaid on first mortgages, or first deeds of trust, securing institutional lenders and recorded prior to the perfection of association assessment liens have priority over the association assessment liens. Subsection (I) provides that the condominium owners’ association may sell the unit at public sale, “subject to prior liens,” if the association complies with certain procedures. Payment of sums remaining on a first mortgage or first deed of trust is not mentioned in the scheme delineated in subsection (I) of the statute. This omission, the majority says, creates the conflict because it renders meaningless the priority of liens set out in subsection (A). I disagree.
Normal usage of the phrase “subject to prior liens” as used in subsection (I) means that the property being sold remains as security for such prior liens - that is, the property remains liable for such *54 prior liens regardless of the transfer of title. This concept is not foreign to creditors’ rights jurisprudence. It is grounded in common law redemption of equity procedures available to subordinate lenders. See Yaffe v. Heritage Sav. & Loan Ass’n., 235 Va. 577, 582, 369 S.E.2d 404, 407 (1988); Kaplan v. Ruffin, 213 Va. 551, 554-55, 193 S.E.2d 689, 692 (1973); Schmidt & Wilson, Inc. v. Carneal, 164 Va. 412, 416-17, 180 S.E. 325, 326-27 (1935). The majority’s interpretation of “subject to prior liens” is inconsistent with that phrase’s well-understood and long-accepted meaning.
The majority’s interpretation also requires adding words to the statute so that the provision would read as follows: “The unit owners’ association may sell the unit at public sale, subject to satisfaction of prior liens.” We generally do not engage in adding words to a statute, particularly when the statute has a clear and unambiguous meaning without the addition of such words. See Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266-67 (2003).
More importantly, in enacting subsection (I), the General Assembly did not render subsection (A) meaningless. The General Assembly exercised its legislative prerogative to provide condominium associations with a process to enforce their assessment liens in addition to traditional foreclosure procedures and the other remedies set out in subsections (C), (D), and (G) of Code § 55-79.84. The priorities set out in (A) apply in all situations involving the sale of the condominium unit except the specific type of sale authorized in subsection (I).
The General Assembly’s understanding of the enforcement mechanism it adopted is further shown by the legislation adding subsection (I) in 1997. In that legislation, the General Assembly also amended Code § 55-516 to provide the identical enforcement mechanism for property owners’ association assessment liens. See 1997 Va. Acts ch. 760. The provisions of subsection (A) in Code § 55-79.84 and subsection (A) of Code § 55-516 regarding the priority of liens are also identical. In contrast, the General Assembly, in prescribing disbursement of proceeds of public sale to enforce the assessment lien of a cooperative association, specifically provided that “ [satisfaction in the order of priority of any prior claims of record” occur prior to satisfaction of the cooperative association’s assessment lien. Code §§ 55-472 (J)(3), -472(J)(4). Subsection (B) of Code § 55-472, like subsection (A) of Code § 55-79.84, also provides that a first security interest previously perfected encumbering the cooperative *55 interest of a proprietary lessee has priority over the cooperative association’s assessment lien.
Because the General Assembly has clearly provided for different payment distributions in the enforcement of assessment liens, even though the prior perfected security interest in each case generally has priority over assessment liens, I can only conclude that the language adopted by the General Assembly was meant to be applied as written. When the General Assembly intended that prior perfected liens be satisfied before payment of an association’s assessment lien, it made the appropriate provisions in the legislation. The language adopted in Code § 55-79.84(1) did not do so and such a payment scheme should not be imposed by judicial interpretation.
The touchstone of the majority’s statutory conflict is its perception that allowing the sale of a condominium unit “subject to” an antecedent deed of trust and paying the condominium assessment lien will somehow seal the doom of condominium development. We do not have the record in this case to support such a conclusion, nor is this Court the proper venue to develop such a record. Rather, the General Assembly is the branch of government designed and equipped to take testimony and compile information on the impact of such payment priorities, and accordingly, to decide the wisdom of adopting them.
Of course, if we were to consider relevant data and our common knowledge and experience regarding condominium development, we might conclude that part of the value of a condominium unit comes from the ability of the condominium association to maintain the common areas of the development, including the structures’ exteriors, landscaping, and amenities. The ability to maintain these elements is directly related to the association’s ability to secure payment of assessments from the individual unit owners. The legislative provision for payment of such association liens from the public sale of a unit, subject to the first deed of trust (and other prior liens), is precisely the type of enforcement mechanism that enhances a lender’s confidence in the value of it’s security interest.
Contrary to the majority’s observations, the sale of a condominium unit pursuant to subsection (I) would not alter the value of the property. There is no change in the original owner’s liability for the first deed of trust note. In fact, following a public sale, satisfaction of the lender’s deed of trust is enhanced because a second party has an interest in seeing that the deed of trust note is not defaulted.
*56 Furthermore, the lender in this case, as in most deeds of trust, anticipated the sale of the property without its consent or satisfaction of its lien. The lending instrument states that, in the event of sale or conveyance of the property, the debt secured by the property is subject to payment in full. Concerns about unit damage or destruction by the owner before foreclosure, in my opinion, are counter intuitive and not consistent with human experience.
Allowing the sale of a condominium unit subject to the lender’s lien simply does not compromise or jeopardize the lender’s security interest. But, as I have said, these concerns are the stuff of legislative policy determinations and not the type of legal principle or rule of statutory construction that should guide our analysis and conclusions.
Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings.*

 The lender in this case also argued that, because its lien was recorded in 1996 and subsection (I) of Code § 55-79.84 was not enacted until 1997, the subsection cannot be applied retroactively to affect its substantive rights. Regardless of whether the 1997 enactment affected substantive rights, the lender is precluded from raising this issue here because it was not raised in the trial court. Rule 5:25. In the trial court, the lender argued that allowing the proceeds from a public sale to be disbursed as provided in subsection (I) was per se unconstitutional because such a construction would violate the Contract Clause of the United States Constitution. U.S. Const, art. I, § 10.